HEARD NOVEMBER TERM, 1872.

## McNAMEE *vs.* WATERBURY.

Where the personal estate of a decedent is insufficient for the payment of his debts, the Probate Court, on the application of his administrator, has jurisdiction, under the Constitution, to order a sale of the real estate for that purpose.

A purchaser at a sale of a decedent's land, made under an order of the Probate Court, for payment of debts, cannot maintain a bill in equity against an occupant of the land, to restrain him from excavating and appropriating to his own use minerals therein, until he has established his title by action at law.

BEFORE MELTON, J., AT EDGEFIELD, JUNE TERM, 1871.

This was a bill in equity, by Richard McNamee against A. G. Waterbury, Frank Holman, James Morrison, Thomas J. Davis, John B. Moore and James Gardner. The facts of the case, and the object of the bill, are stated in the following decree of the Circuit Court:

MELTON, J. This case came on to be heard by the Court at the June Term of the Court of Common Pleas for Edgefield County, 1871. The pleadings and the evidence established the facts. Dudley Rountree, late of Edgefield County, died intestate, seized and possessed of a considerable estate, part of which was a certain tract of land, of five hundred and thirty-five acres, described in the pleadings. He left him surviving his widow, Mary Rountree, and several children, among them Christiana Black, wife of James E. Black, and Mary H. Rogers. Under proceedings for partition among his heirs, in December, 1856, this tract of land was sold by the Commissioner in Equity for Edgefield District, and was pur-

chased by the said James E. Black, who executed his bond for the purchase money, in the sum of thirty-one hundred dollars, with one Joseph Hightower as surety. On this bond are endorsed several credits, for $127.31 on the 9th December, 1856, $700 on the 16th February, 1858, and $1,200 on the 5th December, 1859. In April, 1859, a bill was filed in the Court of Equity for Edgefield District, at the suit of Christiana Black, by her next friend, Joseph Hightower, against James E. Black, her husband, and the heirs and distributees of Dudley Rountree, under which, on the 8th day of June, it was ordered, amongst other things, that the entire portion of the said Christiana, in the estate of her father, Dudley Rountree, be settled upon her, for her sole and separate use, for life, with power to dispose of the same, after her death, by any instrument of writing in the form of a will; and, in default of any such disposition by her, then, after her death, to belong to the said James E. Black, if he survived her, for and during his natural life; and, after his death, if he survived her, or if he does not survive her, then, from and after her death, to belong to her children, and to be divided amongst them absolutely and in fee, in such proportion as they would take of her intestate estate; that the said tract of land of five hundred and thirty-five acres, bought by the said James E. Black, at the sale by the Commissioner, at the price of $3,100, be received and taken as part of the said Christiana's portion of her said father's estate, at the valuation above mentioned; and that the said Joseph Hightower be appointed the trustee under the settlement thereby directed, with the proviso, however, that he should first enter into bond, with at least two good sureties, to the Commissioner of the Court, in the penalty of fifteen thousand dollars, conditioned for the faithful performance of his duties as such trustee. To this proceeding, James E. Black was made a party by regular process, and there was evidence going to show that the order was made with his actual knowledge and consent. Mrs. Christiana Black died without having exercised the power of disposition conferred by this order, leaving her husband and three children, Joseph D., Mary E. and Eliza K. Black, who are minors. The husband, James E. Black, died intestate on the 7th May, 1861, and administration of his estate was granted to Joseph Hightower. On the 10th May, 1866, long after the death of Black, Joseph Hightower, assuming to act as trustee, executed a lease of a parcel of this land, of three acres, to

D. Frank Holman, for the sum of fifty dollars, for the term of five years, and on the 23d November, 1867, a lease of a similar parcel, for a like term and consideration, to Thomas J. Davis and M. C. M. Hammond. The lease of Holman has been assigned to A. G. Waterbury, and that of Davis and Hammond is now held by Davis and J. B. Moore. Frank Holman, James Morrisson and James Gardner, named defendants, disclaim any interest in the matter in controversy.

The parcels of land contain valuable beds of kaolin clay and chalk; and, in pursuance of their respective leases, the defendants, Waterbury, Davis and Moore, are in possession, and have erected expensive buildings and machinery for the purpose of digging and removing these deposits. In April, 1868, Joseph Hightower died. In June, 1869, Mary H. Rogers obtained letters of administration of the unadministered estate of James E. Black, and, on the succeeding day, 11th of June, filed her petition in the Probate Court for Edgefield County, setting forth, among other things, that the personal estate of James E. Black had been sold, in 1861, by Joseph Hightower, as administrator; that the intestate, Black, was indebted to various persons, and principally on the bond hereinafter referred to, now amounting, in balance due, to about four thousand dollars; that Joseph Hightower had failed to administer the estate which passed into his hands; and that there being no personal assets of the intestate remaining, a sale of this tract of 535 acres was necessary for the payment of these debts. On the same day a summons was issued under this petition, directed to the infant children of Christiana Black, returnable seven days thereafter, requiring them to show cause why the prayer of the petition, for a sale of this land, should not be granted. Under an order of the Probate Court, without date, Mary Rountree, the grandmother of these infants, was appointed their guardian *ad litem,* and accepted the appointment. The summons was not served upon the infants until the 15th June, 1869. Without having inquired into the statements of the petition, without having taken an account of the administration of Joseph Hightower, without further proceeding looking to a marshaling of the assets of the estate, and without any answer or other pleading on the part of Mary Rountree on behalf of the infants, the Probate Court passed an order authorizing and empowering the petitioner, as *administratrix de bonis non* of James E. Black, to sell, for cash, either at public or private sale, the real estate of her intestate. On

the following day, 19th June, 1869, the petitioner, Mary H. Rogers, accordingly sold and conveyed the said tract of land of 535 acres to the plaintiff, Richard McNamee, for the sum of thirty-five hundred dollars in cash. The proceeds, it was stated, have been paid to the Probate Judge to await the further order of the Court. On the 28th June, 1869, the bill, in this case, was filed, setting up the title of the plaintiff, impeaching the leases under which defendants claim, and praying a cancellation of the leases, an account of the profits derived from the parcels of land included within them, an injunction against the excavating and appropriating, by the defendants, of the clay and chalk within these parcels, and the surrender of the possession so held by the defendants.

Upon motion before His Honor Judge Platt, a preliminary injunction was granted, in accordance with the prayer of the bill, which, upon a further hearing, was dissolved. In May, 1870, the motion was renewed before me upon an amended proceeding, and under an order to show cause, an *ad interim* injunction was granted, which, by arrangement between the parties, has been continued in force. Upon this statement of facts it is adjudged:

1. The decree of the Court of Equity, under the bill exhibited, in 1859, by Christiana Black, for a settlement of her interest in Dudley Rountree's estate, to which her husband, James E. Black, and the heirs-at-law and distributees were made parties, is binding upon all the parties, and operated to rescind and vacate the sale by the Commissioner to James E. Black, and to vest the estate in Christiana Black for life, and in James E. Black for life, if he survived her, and, upon the death of the survivor, to vest the estate in remainder in Joseph D., Mary E. and Eliza K. Black, the minor children of Christiana Black. It further operated to entitle James E. Black to be released from the bond given by him for the purchase money. Why James E. Black subsequently made payments on this bond, and why it continues to be held against his estate, and why the payments made by him are not accounted for, are matters not pertinent to this issue; not sufficiently so, certainly, to authorize the Court to disregard the final judgment of the Court of Equity, pronounced upon due course of proceedings.

2. The proceedings of the Court of Probate are irregular. The minor children of Christiana Black were not made parties in the manner prescribed by law. The interest of Mrs. Rountree, their grandmother and guardian *ad litem*, was largely and directly an-

tagonistic to theirs, whilst the effect of the proceedings was, if possible, to vacate a decree to which she and the petitioners were parties, of which both—constructively, at least—had knowledge, and by which both were concluded; a decree under which these minors held an absolute estate in the lands in question. The statements of the petitioner were not supported by proof, and the order thereunder was taken as against these minors by default. If these minors held the estate simply as the heirs of James E. Black, they could not be concluded by such questionable and essentially defective proceedings. Clearly they are not concluded, when it appears that the interest of James E. Black terminated at his death, and that these minors held in these lands an absolute estate. The deed of Mary H. Rogers, under the order so pronounced, purporting to convey the estate of James E. Black, in fact conveyed nothing, and the title of the plaintiff is invalid.

It is not pertinent to enquire into the title of the defendants, who were, at the date of the sale to the plaintiff, and are now, in possession of the parcels described in their respective leases. They derive their title from Joseph Hightower, who, having failed to execute the required bond, was not invested, for an instant, with the office of trustee. The consideration for the respective leases is, on their side, grossly inadequate, and they are not regarded as having any claim whatever to the favorable consideration of the Court.

3. The plaintiff, however, must, as at law, depend upon the strength of his own title; and, as this is shown to be invalid, the relief which he seeks must be denied.

It is, therefore, ordered that the bill be dismissed.

The plaintiff appealed, and, for the purposes of the appeal, filed the following exceptions to the decree:

1. To the conclusions of law found by His Honor in paragraph No. 1 of his conclusions of law in his decision herein.

2. To the conclusions of law found by His Honor in paragraph No 2 of his conclusions of law in his decision herein.

3. To so much of the conclusions of law found by His Honor in paragraph No. 3 of his conclusions of law in his decision herein as finds that "the plaintiff must, as at law, depend upon the strength of his own title, and, as this is shown to be invalid, the relief which he seeks must be denied."

4. To so much of the conclusions of law found by His Honor in his decision herein as orders that the bill be dismissed.

5. To said conclusions of law, in that it is not decided that the settlement ordered by the Court of Equity, 8th June, 1859, was only *executive,* and *inoperative* to divest the title of James E. Black to the realty in question.

6. To said conclusions of law, in that it is not decided that the said settlement, being on the *express condition* that the said realty should be taken by Christiana Black at a valuation, the result of the *non-performance* of this condition, was that no right to said realty ever vested in Christiana Black and children.

7. To said conclusions of law, in that it is not decided that the bond given by James E. Black to the Commissioner in Equity, being secured by *statutory lien,* created by Act 1791, the said settlement ordered in a suit *to which said obligee was no party,* was subject to said lien, and the lien never having been removed by said Christiana Black and children, the said realty was properly sold as the property of James E. Black, on the application of his administratrix *de bonis non* for sale of the same for the payment of debts.

8. To said conclusions of law, in that it is not decided that, there being no evidence on the face of said order of settlement or otherwise, that any of the heirs of Dudley Rountree, *cestui que trusts* of the bond secured by the statutory lien, (except Christiana Black,) ever consented to said order of settlement, said heirs have in no manner waived their claims under said *lien,* and the bond secured thereby.

9. To said conclusions of law, in that it is not decided that the subsequent acts of all the parties connected with the proceedings in equity, and of the successive Commissioners in Equity, obligees of the bond given by James E. Black, show that said order of settlement could never have been intended to vacate said bond and lien, was subject to said lien, and, so far as said realty was concerned, embraced only James E. Black's *equity of redemption* therein.

10. To said conclusions of law, in that it is not decided that, even in the event of said settlement being valid and effectual, the effect of the payments made on said bond was to vest in Black an equitable interest *pro tanto,* and the legal title never having passed from him to authorize his *administratrix de bonis non* to apply for sale of said realty for the payment of Black's debts.

11. To said conclusions of law, in that it is not decided that, even

in the event of said settlement being valid and effectual, and the fee simple in said realty vesting in the children of James E. and Christiana Black, who were parties to the proceedings in the Probate Court, their interest in said realty was transferred to the plaintiff, a *bona fide purchaser*, for valuable consideration, and the claims of said children, if any, attached on the fund arising from said sale in the custody of the Probate Court.

12. To said conclusions of law, in that it is not decided that the title of plaintiff and defendants, being from the *same source,* and the title of defendants being pretensive only and invalid, defendants are *estopped* from disputing plaintiff's title.

13. To said conclusions of law, in that it is not decided that the decree of the Probate Court, ordering the sale of said realty, (even if the proceedings are so irregular or defective as to vitiate them, which is denied,) can only be overruled or set aside by appeal to the Circuit Court, or by original proceedings for that purpose at the instance of parties to the proceedings in the Probate Court, or others who have been damnified or aggrieved thereby, and cannot (as is attempted in the present case) be impeached collaterally by defendants, who are not only strangers to the proceedings in the Probate Court, and in no manner damnified or aggrieved thereby, but *wrong doers,* having, according to His Honor's decision, " *no claim whatever to the favorable consideration of the Court.*"

14. To said conclusions of law, in that it is not decided that plaintiff, a *bona fide* purchaser for valuable consideration, under the decree of a competent Court, is entitled to the equitable aid of the Court of Common Pleas, against defendants, without a shadow of claim, committing irreparable injury.

15. To said conclusions of law, in that it is not decided that plaintiff have the injunction and account prayed for in his bill.

*Finley, Youmans, Chamberlain,* for appellant.

*Carroll, Bacon, Carr,* contra. (*a.*)

April 5, 1873.   The opinion of the Court was delivered by

WILLARD, A. J.   Under the view taken of this  case it will be

---

(*a.*) As the principal question in the case seems to have been put at rest by a recen Act of the Legislature conferring jurisdiction upon the Probate Court to order sales of real estate for payment of debts in aid of the personalty, it is deemed unnecessary to publish the arguments of counsel.

necessary to consider only two questions. The first is, whether the Probate Court possesses authority to order the sale of the lands of a decedent for the purpose of raising a fund in the hands of an administrator for the payment of the debts of such decedent when the personal assets are insufficient for that purpose. The second is, whether a purchaser, under an order made by the Probate Court, for the purpose indicated above, can maintain a bill in equity against the occupant of lands so sold, to restrain such occupant from appropriating the *usufruct* of the land, such as minerals, &c., without having established his title thereto in an action at law.

The determination of the question of the authority of the Probate Court involves the construction of the following language from Art. 4, Sec. 20, of the Constitution : " A Court of Probate shall be established in each County, with jurisdiction in all matters testamentary, and of administration in business appertaining to minors, and the allotment of dower, in cases of idiocy, lunacy and persons *non compotis mentis.*" The particular clause to be examined is that conferring jurisdiction in all matters of administration.

It must be considered, *first*, in reference to the sense of the terms employed, and, *second*, in relation to the general intention of the Constitution as to the character of the Court constituted as expressed in the language defining such jurisdiction. We will first consider whether the power of ordering the sale of the lands of a decedent for the purpose of raising a fund in the hands of an administrator for the payment of such decedent's debts is a matter of administration in the sense of the clause under consideration. What are matters of administration is to be determined by the laws of the State existing at the time the language in question was introduced into the Constitution. The object of administration is to pay the debts of the deceased, and distribute his personal estate among those entitled to it, and any act that may properly be performed by an administrator looking to this end is a matter of administration. To accomplish this end the administrator is clothed with authority to collect the personal estate and to convert it into a form suitable for the purpose.

At common law the personal estate alone is assets for the payment of such debts by the administrator. By the Statute (2 Stat., 570,) "the houses, lands and other hereditaments and real estates, situate and being within this State, belonging to any person in-

debted, shall be liable to and chargeable with all just debts, duties and demands, of what nature or kind soever, owing to any person, and shall and may be assets for the satisfaction thereof, and shall be subject to like remedies, proceedings and process as personal estates." It is the unmistakable intent of this clause to make the real estate of a decedent assets in the hands of his administrator for the payment of his debts, if the exigencies of the estate render that course necessary, for that is the necessary result of assimilating the realty to the personalty, as it regards the mode of applying it to the satisfaction of the debts of the decedent.

The interposition of a Court is not required in order to impose the character of assets on the realty, for that is already done by the terms of the Statute; it is only required to ascertain whether the personal assets are insufficient to discharge the debts. It may well be questioned whether a power to sell the realty, in the event of the insufficiency of personal assets, is not conferred directly by the Statute, so that an adjudication of the insufficiency of assets would authorize such sale without a personal order authorizing and directing such sale. Such a construction has not, however, been put on the Statute by judicial authority, and we are not called upon, at the present time, to consider it. It is enough to know that, assuming the necessity of a judicial declaration of the fact of the insufficiency of personal assets, upon the ascertainment of such fact, the duty is imperative of subjecting the realty to the payment of such debts, and the Court has no discretion but to proceed to do whatever may be requisite to give efficacy to the Statute. Does jurisdiction in all matters of administration embrace the authority to determine the fact of the insufficiency of personal assets and power to conform to the requirements of the Statute, as it regards subjecting the realty to like remedies, as are appropriate in the case of personalty? As the application of the personalty, as assets in the hands of the administrator, to the payment of debts, is indisputably a matter of administration, it would seem reasonable that a provision of law, placing realty on the same footing, in this respect, as personalty, was intended to make the application of the realty to such purpose a matter of administration also.

It is true that the administrator cannot, of his own mere motion, reach out his hand and take possession of the realty and sell it as if it were personalty. He must, indeed, apply to a Court and show grounds for such demand, but the very fact that he may make such

a demand of the Court shows that he has a right to the thing demanded, and this right arising under the Statute, he holds in virtue of his office as administrator.

The concession that the administrator is clothed with authority to demand through the proper Court power to sell the realty is a concession ; that the application of the realty to the payment of debts, in the event of the insufficiency of personal assets is, in a strict sense, a matter of administration, or, in other words, a matter in respect of which the administrator is clothed with power to act in virtue of his office.

This conclusion is strengthened by looking at the terms under consideration from the stand point of the Constitution. They are there employed to define the powers of a Court, not of an administrator. It is judicial jurisdiction that they describe.

Jurisdiction, in matters of administration, means power to do what a Court ought to do in the matter of administration.

The Constitution furnishes a Court on which the administrator may lean, and which can supplement his legal powers by its process ; to say, then, that the measure of the powers of the Court shall be precisely that of the powers of the administrator is to misconceive entirely the distinction between jurisdiction and administrative competency. If it is contended that the power of an administrator, to reach the realty as assets, is not absolute, but depends on the contingency of there being an insufficiency of personal assets, the answer is clear, that the expression " all matters of administration " is broad enough to embrace contingent as well as absolute power.

The expression " all " imports an intent to clothe the Probate Court with full power in matters of administration. That it was the intention of the Constitution to clothe that Court with full efficiency, as it regards matters of administration, is evident from the nature of the Court, as established by Sections 1 and 20, Article IV, of the Constitution. It is enumerated among the Courts between which the judicial power of the State is portioned. Jurisdiction is conferred upon it in matters of great moment, embracing some of the most delicate and responsible powers exercised in Chancery. In addition to matters of administration it has jurisdiction of all matters testamentary. It has charge of the persons and estates of minors and others not possessed of legal competency to act in their own right. It may allot dower. A Court possessed of such large powers must have been regarded as fully competent to ascertain the

fact that the personal estate of a decedent was insufficient to pay his debts, and, to comply with the requirements of the Statute, demanding that in such cases the realty should be subjected to the same remedies and process as the personalty.

In the ordinary course of business before the Probate Court the fact would appear whether the personal estate was insufficient for the payment of debts ; in fact, this is the precise place where that fact ought to be judicially ascertained. After that fact is ascertained, the making of the order for the sale of the realty is merely a matter of course under the Statute. Why, then, should the labor and expense be incurred of going into the Circuit Court for such order of sale ? No good reason has been assigned, nor can be assigned, for the existence of any such necessity.

The case of the *Bank of Hamilton* vs. *The Lessees of Dudley* (2 Peters, 492,) was cited as placing a construction on words similar to those under consideration, as employed in the State of Ohio ; but it has no bearing on the case in hand. It was there held that the right to sell realty to pay debts was not included under the words "jurisdiction in all probate and testamentary matters," (p. 524.)

The words "matters of administration" were not involved in that case. Whatever may be the law of Ohio, it is clear that by the law of South Carolina the application of the realty to the payment of a decedent's debts, in the event of the insufficiency of the personalty, is a matter of administration, and, as such, is within the jurisdiction of the Probate Courts under Section 20 of Article IV of the Constitution.

The next question to be considered, as already stated, affects the right of the complainant to file a bill in equity as against parties in possession of the land at the time of sale, asking an injunction to restrain them from taking to their own use the profits of the land, the principal profit being a mineral substance found on the land, without first establishing his title in an action at law. The bill was filed prior to the adoption of the Code of Procedure, and must stand or fall by the rules prevailing at that time.

The effect of an order of sale, made by the Probate Court, in the cases under consideration, is to place the purchaser, in reference to the lands to which it relates, in the position and title of the decedent as against the various parties interested in and bound by the settlement of the estate before the Probate Court. It cannot determine any question of title between the purchaser and a stran-

ger to the estate in possession. To obtain possession, as against such stranger, the purchaser must bring his action at law, and establish his title by a verdict.

While his title is in dispute, by one in possession, he cannot obtain the aid of a Court of Equity to restrain the occupant from exercising right of ownership. For the reasons stated, the order dismissing the bill was proper, and the appeal must be dismissed.

*Wright*, A. J., concurred.

MOSES, C. J. I concur with the majority of the Court in dismissing the motion, because, in my judgment, the Judge of Probate does not possess the power of ordering a sale of the real estate of an intestate, by an administrator, for the payment of debts, on a deficiency of personal assets. The appellant here relies upon his title for the relief which he seeks by his bill. His claim to the equitable jurisdiction of the Court depends entirely on his right to the land. No matter what incidents attached to or follow its ownership, he is not entitled to their enjoyment unless the title vests in him.

The office of Judge of Probate was unknown by name in this State until the adoption of the Constitution of April, 1868. The first Section of the fourth Article of that instrument, in enumerating the Courts in which the judicial power of the State shall be vested, includes "Probate Courts." The twentieth Section of the same Article declares that " a Court of Probate shall be established in each County, with jurisdiction in all matters testamentary and of administration, in business appertaining to minors and the allotment of dower, in cases of idiocy and lunacy, and persons *non compotes · mentis.* The Judge of said Court shall be elected by the qualified electors of the respective Counties for the term of two years." With the exception of a provision (Section twenty-seven) for a Clerk of the said Court, it is not again mentioned in the Constitution. The Legislature, on the 21st September, 1868, at its first session after the adoption of the Constitution, passed " an Act to define the jurisdiction and regulate the practice of Probate Courts," (14 Stat., 76,) to determine the extent of the jurisdiction of that Court we are to look to the Constitution, for, though the cotemporaneous Acts of the Legislature may reflect the light by which the true intention of the Constitution may be discovered, still of them-

selves they cannot operate to extend or enlarge a jurisdiction by the organic law intended to be of a limited character. All the means necessary and proper for the full exercise of the powers conferred by the Constitution may be granted by the Legislature, but it is impotent to confer, by Act, any additional power. In this connection it may be proper to say that nothing can be found in the said Act to which the power now claimed can be referred. If it is not conferred by the language of the Constitution, defining the general powers of the Court, it cannot be implied from either of the provisions of the said Act.

It cannot be denied that the Court, thus established, was the successor of the Court of Ordinary, which had existed in this State from the earliest organization of our judicial system, having in charge all matters relating to the property of deceased persons, whether to be administered under testamentary disposition or by the general law, alike applicable to the estates of all who die intestate. The Legislature, so regarding the new office, by the 39th Section of the same Act, not only directed " that the files, records and property of or appertaining to the said Courts of Ordinary should be transferred to the Courts of Probate for the several Counties," but declared " that all laws and parts of laws of the late Provisional Government of South Carolina relative to the powers, duties and course of procedure of the Courts of Ordinary and Equity, so far as the jurisdiction of the said Court is herein conferred on the Court of Probate, not inconsistent with the Constitution and this Act, or supplied by it, are hereby adopted and declared to be of force, and applicable to the Courts of Probate." Thus all the laws, then of force, in relation to the powers, duties and course of practice in the Courts of Ordinary, not inconsistent with the Constitution, were extended to the Courts of Probate. As the Constitution had included, in the jurisdictions of these Courts, powers which had before appertained exclusively to the Courts of Equity, it was proper to declare such laws " of force and applicable to the Probate Courts." But the powers so conferred are expressly named in the Constitution. The order of the Judge of Probate, in the case before us, is sought to be justified by the words of the Constitution, repeated in the 5th Section of the Act of 1868, " shall have jurisdiction in all matters testamentary and of administration," and the words of the 7th Section of the same Act, "all proceedings in relation to the settlement of the estate of any person deceased." We do not perceive

that these enlarge the powers before exercised by the Ordinaries in the particular matters to which they refer. It is not necessary to enquire what was intended by the term "matters testamentary," or to what they were to apply, or to what limited, for the order here was not in a proceeding under a will, but in regard to real estate of which the person last seized had died intestate. Administration, when applied to an estate, has a well defined and technical meaning. It embraces the course of procedure by which the personal property of an intestate is to be taken in lawful charge and held after the payment of the debts for the benefit of those who may be entitled as distributees. Its duties, so far as concern the person to whom the letters, the title to the office, are committed, may be said to be comprised in the oath, which, on qualifying, the administrator is required to take, (5 Stat., 110,) and this exclusively relates " to the goods and chattles, rights and credits of the intestate." Indeed, it is not urged that the power to sell land for the payment of debts of the intestate is a necessary incident to the office of an administrator, for the real estate vests not in him, but in the heir, and, therefore, such a proposition could not be ventured by the learned counsel who have been heard in behalf of the plaintiff.

But, if the real estate, as it is conceded, does not vest in the administrator, how can it follow, as a matter of course, that the Probate Judge, from the mere fact of his jurisdiction in "matters of administration," can authorize the administrator to sell the land for the payment of debts? Where the exercise of a power is claimed for a Court of limited jurisdiction, it must be shown to exist by express grant, or to be necessarily consequent upon some power clearly given. That which was exercised by the Probate Judge is not expressly granted, and to give to the words, "all matters of administration," such an enlarged and extended operation would be changing the character of his Court, and converting it into one of general jurisdiction. At the time the office of Ordinary was substituted by that of the Judge of Probate, he exercised jurisdiction "in all matters of administration," and yet, by the mere force of it, the power now claimed was never supposed to be vested in him.

"Words and phrases, the meaning of which, in a Statute, has been ascertained, are, when used in a subsequent Statute, to be understood in the same sense."—Bac. Ab., Tit. Statute, J., 1.

The purpose of the 7th Section of the Act, to which we have above adverted, was to confine to the Probate Court of the County

in which the will was proved or administration granted "all pro-ceedings in relation to the settlement of the estate of any person deceased." Its position, with reference both to the Section which precedes and the one that follows it, evidently shows the intent of the Legislature in its enactment. But, if we are wrong in so sup-posing, and it is necessary to give meaning or construction to the word "settlement," as it is that on which, in this connection, the plaintiff relies, can it be held to refer to anything but the adjust-ment of the estate on which the final account is taken, and the interests of the various parties involved in it ascertained and ad-justed by the judgment of the Court? It implies finality, a termi-nation of the office of executor or administrator, and a transfer to the legatees or distributees, as the case may be, of the property held for their benefit. The order for the sale of real estate, necessary for the payment of the debts of the intestate, is but of an interlo-cutory character, to be granted by a Court of competent authority when the circumstances and condition of the estate justify it.

But it is said that the words "all matters testamentary and of administration" embrace more than the ordinary ministerial duties of an administrator, and hence an attempt is made to distinguish between the limitations imposed upon an administrator, *eo nomine*, and the Court itself, restricting the one to his duties as specified and limited, but leaving the other charged with the *entire* administra-tion of the estate. This construction would convert an admitted inferior tribunal into one of the most general and unrestricted powers, for, under such a claim of authority, its jurisdiction, in regard to the real and personal estate of an intestate, would be without limit.

The administrator, instead of being the representative of the intestate, as to the personal property of which the title vests in him, by law, and to an account for which he is liable, would thus be con-verted into a trustee of the lands while the actual title to them remained in the heirs-at-law.

But the term "administration" has a well understood and accepted meaning. The counsel of the appellant refers to 1 *Bou-vier*, 83, defining it "as the management of the estate of an intestate, or of a testator who has no executor." It does not refer to the management of it by the Court, but by the administrator. The administration is the act and work of the party who conducts it, and not of the Court which granted it. The very term adminis-

trator denotes the person charged with the administration of the estate. But, if the term used in the Constitution refers to the Court, and not to the administrator, how 'can this sanction a construction which would give a Judge of Probate power over the lands of an intestate? He exercises jurisdiction over the personal effects of the intestate, through a power originally exercised by the crown, and afterwards delegated to the clergy, as Ordinaries (2 Blk., 494,) who abstained from all interference with the real estate.

So complete was the authority of these officers over the goods and chattels of the intestate, that they were not bound to pay his lawful debts, and after deducting the *pars rationabilis* of the wife and children, they might apply the remainder to whatever purposes their consciences should approve.—1 Wms. on Exors., 330. By Stat., 13, Ed., 1 c., 19, they were obliged to answer for the debts of the intestate as far as his goods extended, and it was not until Stat. 31, Ed. 3, St. 1, c. 11, that they were required to "depute of the next and most lawful friends of the dead person intestate to administer his goods." The office has relation exclusively to the charge and control of the personal property; the bond which the administrator gives has reference alone to this, and so grave a power as that of converting the real estate, the title to which is in the heirs, into money, the title to which is to vest in the administrator, should not be accorded unless the right to exercise it can be shown by some positive enactment.

The authority is also claimed from the effect of the Stat., 5, Geo. 3, 2, ch. 7, 2 Stat., 570, which makes "houses, lands, negroes and other hereditaments and real estates in the said plantations belonging to any person indebted, liable to and chargeable with all just debts, duties and demands, and shall and may be assets for the satisfaction thereof in like manner as real estates are, by the law of England, liable to the satisfaction of debts due by bond or other specialty, &c."

This Statute has been of force in South Carolina for over a century and a quarter, and yet it has never yet been so construed as to change the relative rights of the administrator and the heir in regard to the personal and real estate of an intestate. If lands are to be held as assets for the payment of debts "in like manner as personal estates in any of the said plantations, respectively, are seized, extended, sold or disposed of for the satisfaction of debts," why may not the administrator sell, by mere leave of the Probate

Court, without making the heirs parties to the application ? While the Statute declares the lands liable for debts, and makes them assets for their satisfaction, as real estates by the law of England are liable to debts by specialty, it in no way changes the legal title in such lands, or subjects them to any sale on the application of the administrator for the payment of debts. The benefits which it confers is to be sought by the creditor, and is not to be extended on the motion of the administrator, who holds no title in the real estate.

It is true that where a Court of Equity entertains an application for the sale of real estate of an intestate, for the payment of debts, the administrator is made a party. The propriety of this course is plain. The personal property is first liable to the debts, and before the real estate shall be subjected to their payment, the personal representative should be required to answer ; and, to prevent circuity of action, an account is taken at once in the case, and a decree entered against him, if in default, which enures to the benefit of the heirs.

The Court of Ordinary was clothed with as full authority, in all matters testamentary and of administration, as the Court of Probate, which succeeded it.—See Act of 1839, 11 Stat., 39. It was, however, never contended that, on the application of the personal representative of the deceased, it could grant authority for the sale of real estate for the payment of debts on the failure of personal assets to meet them. A provision, however, did exist, by which the creditor might secure, for his debt, the proceeds of real estate sold by the Ordinary for partition; and, by pursuing the mode prescribed, the rights of the heirs, as well as of the administrator, were duly protected.—Act of 1842, 11 Stat., 232.

The effect of the decision of the Court will vest this inferior jurisdiction with a large control over the most valuable property of the people of the State. In the majority of the cases of which it will take cognizance, minors will be interested, and in how summary a manner, and by what machinery their rights will be disposed of, may be seen in the course pursued in the case before us.

Believing that the said Courts are not vested, by the Constitution, with the power, I cannot concur in according it.